THE STATE OF NEBRASKA, EX REL. WILLIAM R. DAVIS ET AL.,
    v. BOARD OF COUNTY COMMISSIONERS OF CASS COUNTY,
    NEBRASKA, ET AL.

FILED MAY 20, 1903.    No. 13,105.

1. Adjunct School District Act. Chapter 63 of the laws of 1901, commonly known as the adjunct school district act, provides no method for submitting the question of creating an adjunct district a second time, and no officer or person is thereby granted authority to submit the question or give notice thereof.

2. Creation of Adjunct School District. To create an adjunct school district, it requires the concerted action of all of the common school districts embraced therein. And the question must be submitted to, and voted on, by all of such districts.

3. ———: VOID ELECTION. Where the question was submitted to only a part of such school districts, and in many of the districts embraced in the proposed adjunct district no vote was taken on the proposition, the election is void and no adjunct district is created thereby.

4. ———: TAX LEVY: MANDAMUS. In such a case, a writ of mandamus to compel the county board to levy a tax to carry on the business of an adjunct school district must be denied.

ERROR to the district court for Cass county: PAUL JES-
SEN, DISTRICT JUDGE.  *Affirmed.*

*Cary S. Polk,* for plaintiffs in error.

*Jesse L. Root, contra.*

BARNES, C.

The relators commenced this action in the district court
for Cass county, for the purpose of procuring a peremptory
writ of mandamus, against the board of county commis-
sioners and the county clerk of said county, requiring the
commissioners to levy a tax of two mills on the dollar
valuation of all taxable property in the territory compris-
ing ninety-five school districts situated therein, and to com-
pel the county clerk to extend such tax upon the tax list of
said county for the year 1902, for the purpose of meeting
the expenses of carrying on the business of an adjunct
school district, which it was alleged in the petition had
been created under the provisions of chapter 63 of the laws
of 1901, which we will designate as the "Adjunct School
District Act," comprising all of the school districts in said
county, and the territory embraced therein, except five.

It appears from the record that Cass county is divided
for school purposes into one hundred school districts; that
in ninety-five of these districts the electors are entitled to
vote on the question of establishing an adjunct district, but
that districts numbered 1, 22, 32, 36 and 95 are high school
districts, and can form no part of such adjunct district;
that the relators are resident electors of certain school dis-
tricts in said county, and each of them has a child, who
has completed the course of study in the school of his
respective school district and whose education can not
profitably be carried further in the public schools of the
district of his residence, and who is entitled to pursue the
course of study provided by law in the high schools of said
county; that the districts in which the relators reside are

those entitled to vote on the question of creating an adjunct school district; that four of the five high school districts in said county have been designated by the state superintendent as accredited schools, and have voted to open their said schools for the reception of pupils from an adjunct district; that after the approval of the act in question, which passed with the emergency clause and took effect immediately, the question of establishing an adjunct district in Cass county under the provisions of said act was submitted to the electors of the various school districts in said county to vote thereon at their annual meetings held on June 24, 1901, and that said proposition failed to carry. It further appears that more than fifteen days prior to the annual school meetings held on June 30, 1902, the county superintendent of said county sent a circular letter to the moderators of each of the ninety-five districts above mentioned in which he requested the moderator to submit the question of creating an adjunct school district to the voters at the coming annual meeting; that he also furnished them with blanks for the purpose of returning the vote cast upon that proposition to him. It further appears that this was the only notice or proclamation of any kind relating to the submission of the question ever made by the county superintendent, or any other person or officer, whomsoever. It also appears that each of the ninety-five directors made out and posted a notice of the annual school district meeting in his district, as follows:

"NOTICE.

"For the Annual School District Meeting.

"The annual meeting of the legal voters of school district No. —— of Cass county, Nebraska, will be held at the schoolhouse on Monday the 30th day of June, 1902, at 8 o'clock P. M. for the purpose of electing a director for said district, and for the transaction of such other business as may lawfully come before it.

"———————————, *Director*."

This was the only notice ever published or posted relat-

ing to the annual school meeting in the several districts of the county for the year 1902. It further appears that in seventy-five of the ninety-five school districts above mentioned, the moderators at the annual meeting caused the question of creating an adjunct school district to be submitted to the voters then and there assembled; that in sixty of the districts, the vote taken on that proposition was canvassed and returned to the county superintendent within ten days, which return showed that 315 votes had been cast for an adjunct district and 287 against the proposition; that fifteen districts failed to make return to the county superintendent within ten days, and their votes were not considered, although it was ascertained that in those districts forty-two votes had been cast for and fifty-nine against the proposition. No account whatever was taken of the other twenty districts in which the question does not apear to have been submitted; that in three of these districts, alone, there were eighty-four voters entitled to cast their votes on the proposition, which was a greater number than would be necessary to change the result of the election, as declared by the county superintendent. It further appears that within the ninety-five school districts, entitled to vote on the proposition, there were more than 2,000 legal voters, and yet only 602 votes, cast upon the proposition, were considered by the county superintendent at the time he declared the question carried. It further appeared that in several of the school districts the voters at the annual school meeting had voted to levy a tax of 25 mills on the dollar for school purposes, the same being the largest amount which they could lawfully levy. It was also shown that the respondents, the county commissioners, had made no estimate at the time of their January meeting, at which they were required to make an estimate of the necessary expenses for the ensuing fiscal year, for the purpose of meeting the expense of an adjunct school district, and that the board had levied, for the year 1902, the full amount of county tax which they were entitled to levy under the constitution and laws of this state.

The cause was submitted to the court on the petition and the facts above stated, who found generally for the respondents, denied the writ and dismissed the action. From that judgment the relators prosecute error to this court.

The first question which confronts us is, was the proposition to create an adjunct school district lawfully submitted to the electors of all of the school districts comprising the territory sought to be included in such district? We think not. Waiving the question of the validity of the act, it appears from its terms that it was self-executing as to the submission of the question to the voters at the first annual school meeting after it went into effect. Section 4 reads in part as follows:

"For the purpose of meeting the expenses contemplated by this act, all of the territory of each county of this state not included in any high school district may be constituted as an independent taxing district known as the adjunct district of such county; the common school districts or parts of districts included in such adjunct district shall be the voting precincts of such adjunct districts; it is hereby made the duty of the moderator of each common school district in this state to submit the question of the establishment of an adjunct district in the county in which it is located to a vote of the legal voters of his district at the annual meeting of said district next occurring after the taking effect of this act, and to certify the result of such vote to the county superintendent."

It appears that these provisions of the law were understood by the moderators and electors of the school districts of the county, and the question was properly submitted to the voters at the annual meeting in 1901; that great interest was taken therein; that there was a large attendance of the electors at that meeting and that the proposition failed to carry. This self-executing provision of the law, had then served its purpose and could not be held to require another submission of the question. It is further provided in the act that:

"If the vote provided for in this section in any county

shall be against such adjunct district the question may again be submitted at any subsequent annual meeting of the common school districts embraced in said proposed adjunct district, and any adjunct district may be discontinued by a majority vote of its electors taken in the manner above provided for its establishment."

This part of the law is simply permissive, and is in no sense mandatory. If the question be again submitted, it is necessary that there should be some officer authorized to determine that fact and give notice thereof to the voters of the several school districts to be affected thereby. The self-executing provisions of the law contain no authority and provide no method for a second submission of the question, and the only provision therefor is the one above quoted. The facts in this case clearly show the necessity of having some officer or person designated by the act itself who has the power and is charged with the duty of submitting the question and giving the proper notice thereof, so that there may be a concerted action of all of the school districts interested or affected by the creation of an adjunct district. No such officer or person is designated by the act. The court can not supply this deficiency of the law. To do so would be to engage in judicial legislation. In case the county superintendent, or any other officer or person should assume to submit the question and give the notice of submission, such action would be of no force or effect whatever. As the law stands there is no way of procuring concerted action. It simply provides that the question may be again submitted to the common school districts embraced in the proposed adjunct district. This must be construed to mean all of the districts, and it can not be said that a submission to any number less than all of them is a valid submission or will result in a valid election.

In the case at bar, it appears that a large number of the school districts embraced in the proposed adjunct district took no part in the election, and the question was not submitted to the voters of such districts at their annual school

meeting.   If the proposition in question be held to have
been adopted by this semblance of an election, it might,
with equal reason, be declared to have been carried or
adopted by the majority vote of a single district.   It was
the obvious purpose and intent, and is clearly the letter
of the act, that all of the districts affected by the creation
of an adjunct district must participate in the election in
order to be bound by the result.   It appearing on the face
of the petition that the question was not so submitted, and
that a large number of such districts did not vote on the
question at all, we are constrained to hold that there was
no proper submission of the question; that the election de-
scribed in the petition was illegal and void, and that no
adjunct school district was created thereby.

It follows that the finding of the trial court in favor
of the respondents is sustained by the record, and the
judgment denying the writ was right.   We therefore rec-
ommend that the judgment of the district court be affirmed.

ALBERT and GLANVILLE, CC., concur.

By the Court:   For the reasons given in the foregoing
opinion, the judgment of the district court denying the per-
emptory writ of mandamus in this case is

AFFIRMED.